# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ROMA SNEED,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-20-425-P** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter AR___), and the parties have briefed the issues. For the following reasons, Defendant's decision is affirmed.

I.  <u>Administrative History and Final Agency Decision</u>

Plaintiff protectively filed his applications for disability insurance benefits and supplemental security income on September 30, 2016. AR 102, 103, 354-55, 361-66. Plaintiff alleged he became disabled on October 12, 2012, and later amended that date to January 23, 2016. AR 15, 354. The Social Security Administration

1

denied Plaintiff's applications on January 25, 2017, *see id.* at 102, 103, 104-17, 118-31, and on reconsideration on April 19, 2017. AR 132, 133, 134-51, 152-68.

Plaintiff appeared with counsel and testified at an administrative hearing conducted before an Administrative Law Judge ("ALJ") on December 12, 2017. AR 31-59. On May 16, 2018, the ALJ issued a decision in which he found Plaintiff was not disabled within the meaning of the Social Security Act. AR 170-83. The Appeals Council subsequently vacated the ALJ's decision and remanded the matter for further evaluation of the effects of Plaintiff's major depressive disorder on the mental residual functional capacity ("RFC"). AR 191-92.

Plaintiff again appeared with counsel and testified at a second administrative hearing on August 23, 2019. AR 60-83. A vocational expert ("VE") and a medical expert also testified. AR 65-71, 72-82. On September 26, 2019, the ALJ issued a second decision in which he found Plaintiff was not disabled within the meaning of the Social Security Act. AR 10-24

Following the agency's well-established sequential evaluation procedure, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 23, 2016, the alleged onset date. AR 15. At the second step, the ALJ found Plaintiff had severe impairments of arthralgia, carpal tunnel syndrome, depression NOS, and borderline intellectual functioning. *Id.* At the third step, the ALJ found these impairments were not *per se* disabling as Plaintiff did not have an impairment or

combination of impairments meeting or medically equaling the requirements of a listed impairment. AR 17.

At step four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of light work, with the following exceptions:

> [Plaintiff is limited to] frequent handl[ing], finger[ing] or grip[ping with his] dominant upper extremity. He is limited to simple, repetitive instructions with occasional and superficial interaction with the public and occasional interaction with coworkers or supervisors. [Plaintiff] also has the ability to attain a verbal comprehension of index 58, perceptual reasoning [] index of 69, working memory index of 60; spelling 2nd grade level, math 3rd grade level; reading composite 61, auditory memory 78, visual memory 82, visual working memory 63, immediate memory of 69, and delayed memory 86; (Math 3rd grade is Level 1 on GED).

AR 20.

At step five, relying on the VE's testimony, the ALJ determined Plaintiff could not perform his past relevant work. AR 22. Still relying on the VE testimony, the ALJ found Plaintiff could perform other jobs existing in significant numbers in the national economy, including merchandise marker, mail sorter, and power-screwdriver operator. AR 23-24. As a result, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, from January 23, 2016 through the date of the decision. AR 24.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. 20 C.F.R. § 404.981; *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009).

## II.  Issues Raised

Plaintiff raises four issues on appeal. First, Plaintiff contends the ALJ failed to properly consider the opinion of Dr. Charles Murphy from the first administrative hearing and failed to consider probative evidence supporting the same. Doc. No. 19 ("Op. Br.") at 10, 12-15. In his second issue, Plaintiff asserts the ALJ improperly weighed the opinion of Dr. Robert Danaher. *Id.* at 15-22. Third, Plaintiff argues the ALJ improperly weighed the opinion of Dr. Beth Ann Maxwell. *Id.* at 22-27. Finally, Plaintiff contends remand is required to consider his case under new rules regarding the consideration of a claimant's literacy. *Id.* at 31.

## III.  General Legal Standards Guiding Judicial Review

Judicial review of Defendant's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). Substantial evidence "means-and means only-'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, __ U.S. __, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citations, quotations, and brackets omitted). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* (quotations omitted). While a court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, a court does not reweigh the evidence or substitute its own judgment for that of Defendant. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

IV.   Dr. Murphy's Opinion

During the first administrative hearing, Dr. Murphy, the medical expert, testified that he agreed with the non-examining state physician's conclusion that Plaintiff had an RFC allowing for light work. AR 47. However, in doing so, Dr. Murphy specifically stated that his agreement was premised on the medical record before him and that did not include a consultative examination. *Id.* Earlier in the hearing, Dr. Murphy had expressed concern that the record consisted primarily of pain management records that were mostly copy and paste and therefore, difficult to discern. AR 46 ("Now a lot of [the] records are basically pain management records,

and unfortunately it's hard to interpret those because there's a lot of ugly - - there's a lot of copy and paste."). Dr. Murphy also explained that he thought Plaintiff's RFC should include some limitation with regard to hand manipulations.

> It's a little difficult to tell whether it would be occasional or frequent in the range of handling or fingering, but I would have some limitation on the right-sided handling and fingering. Probably on the basis of carpal tunnel release I would limit that to frequent. If he's really having some, you know, physical issues with - - with pain otherwise, like some kind of a cyst or calcified lesion, then I might limit it to occasional.

AR 49. Following the first administrative hearing, the ALJ ordered a consultative physical examination. AR 755-61.

The consultative examination was performed by Dr. Stephen M. Chaudry on January 11, 2018. AR 755-64. Dr. Chaudry noted, *inter alia*, a ganglion cyst over the fourth metacarpophalangeal joint in Plaintiff's right hand, but also noted that it was not tender and did not interfere with Plaintiff's grip. AR 757. Dr. Chaudry observed Plaintiff could "button and unbutton, pick up [a] piece of paper, and tear it up with no difficulty. Fine and gross manipulative movements of the hand and fingers are normal and intact. Grip strength in both hands normal, 5/5." *Id.*; *see also* AR 759. Dr. Chaudry's conclusions support the ALJ's RFC in which he limited Plaintiff to frequent handling, fingering, and gripping. AR 20.

Plaintiff relies on Dr. Murphy's testimony in the first hearing as well as an examination by his treating physician, Dr. Patrick O'Neill, the day prior to Dr. Chaudry's consultative examination to argue the ALJ's RFC in this regard was error.

Plaintiff visited Dr. O'Neill complaining of low back pain. AR 787. During the examination, Dr. O'Neill noted that Plaintiff

> has severe pain in his right hand with any kind of gripping or pressure from shaking and or touch. . . . There is a large calcified area on this medical.[1] This is very painful to touch and movement. He also has a large 1.2770.8 cm cyst on the posterior proximal fifth digit. This is soft and movable but is very painful to touch. He is still having pain in the left hand as well. It does not have any cyst but it does swell at times and is painful with gripping.

AR 789. Plaintiff argues the ALJ failed to consider Dr. O'Neill's examination findings and Dr. Murphy's first administrative hearing testimony because he does not specifically reference them in his decision. The Court disagrees.

First, though Plaintiff couches this issue on appeal as the ALJ's failure to properly consider Dr. Murphy's opinion, in asserting this argument, he relies heavily on Dr. O'Neill's January 10, 2018 examination. It is pertinent to note that Dr. O'Neill's notations from this visit do not constitute a medical opinion. The Social Security regulations define a medical opinion as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .

> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other

---

[1] Based on the remainder of the record, Dr. O'Neill was likely referencing the proximal joint of the second finger. AR 789.

physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a).

Plaintiff argues that due to the ALJ's failure to discuss "Dr. Murphy's expert testimony [and] Dr. O'Neill's continued notations of painful calcification and cyst[,] . . . the error is clear: the ALJ failed to discuss every medical opinion in the record." *Id.* However, Dr. O'Neill's notations do not indicate a particular work-related limitation. Indeed, Dr. O'Neill never articulates any precise limitation that should apply to Plaintiff's abilities. *See, cf., Marshall v. Astrue*, 315 F. App'x 757, 760 n.2 (10th Cir. 2009) (holding an ALJ may properly reject a medical opinion where the opinion "did not contain an assessment of the nature or severity of [the plaintiff's] physical limitations or any information about what type of activities he could perform.").

Second, Plaintiff's conclusory assertion that Dr. Murphy would have limited Plaintiff to occasional finger manipulations based on Dr. O'Neill's medical records

is simply conjecture and certainly not supported by the record. As established above, during the first administrative hearing, Dr. Murphy specifically stated that he could not reach a conclusion based on the pain management medical records because they consisted so much of merely copying and pasting previous examination findings. AR 46, 49. The pain management records Dr. Murphy referenced were from Dr. O'Neill. AR 46, 49, 687, 690, 694, 697, 700, 703, 705, 709, 712. Those records contained the exact wording upon which Plaintiff now relies from Dr. O'Neill's January 10, 2018 examination record, quoted above. AR 789.  This same language continued to be repeated in Dr. O'Neill's subsequent records. AR 792, 795, 797-98, 801, 804, 808, 810, 813, 817, 820, 824, 828, 832, 836. Essentially, Dr. O'Neill's records contain the same examination findings with regard to Plaintiff's hands from 2016-2019.

Based on Dr. Murphy's refusal to draw a conclusion regarding Plaintiff's limitations in light of the copy and paste nature of Dr. O'Neill's records, it is nonsensical to conclude he would determine Plaintiff had more severe limitations than those set forth in the RFC if he were to consider the same copy and pasted language in subsequent records. Indeed, as Defendant notes, during the first administrative hearing, Plaintiff's counsel specifically acknowledged that the copy and paste nature of Dr. O'Neill's records made it difficult to ascertain Plaintiff's limitations with regard to his hands. AR 57-58 (" . . . Dr. Murphy's point is a little

well taken with regards to the cut and paste nature of his pain management records, so it's hard to tell really what the limitation with the hand is."). This acknowledgement makes rather suspect Plaintiff's current argument relying on the same copied and pasted language of three years.

Plaintiff argues the ALJ's decision indicates he did not consider Dr. Murphy's opinion. The ALJ stated in his decision that in determining Plaintiff was limited to frequent hand manipulations, he "[c]onsider[ed] the evidence received into the record at the hearing level [and] . . . the two consultative examinations and the medical expert testimony . . . ." AR 22. Based on an extended discussion of whether "medical expert testimony" can refer to the testimony of two different experts and the fact that the ALJ used the plural form of "examinations," Plaintiff contends the ALJ is referencing only the medical expert testimony offered at the second administrative hearing. The Court disagrees.

It is axiomatic that "medical expert testimony" can subsume all such testimony offered. The ALJ was not required to use language such as, "the testimony offered by both medical experts." Moreover, the second medical expert did not offer any testimony regarding Plaintiff's hand manipulation abilities. Yet, the ALJ stated, "Considering the evidence received into the record at the hearing level, the [ALJ] gives some weight to the[] non-examining physicians but finds that, based on the two consultative examinations and the medical expert testimony, the claimant cannot

use his right hand more [than] frequently, and he is restricted to only occasional interaction." AR 22. Thus, Plaintiff's argument that the ALJ failed to consider Dr. Murphy's testimony is without merit.

Finally, presuming without deciding that Dr. O'Neill's January 10, 2018 examination notes are reliable, there is clearly a conflict between these notations and Dr. Chaudry's observations and findings the following day. To the extent this case presents conflicting medical evidence, the record reveals the ALJ acted within his province to determine the appropriate weight to be attributed to the evidence in order to resolve the conflict. *Boss v. Barnhart*, 67 F. App'x 539, 542-43 (10th Cir. 2003) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991)).

## V.  Dr. Danaher's Opinion

Plaintiff asserts the ALJ improperly weighed the opinion of consultative psychological examiner, Dr. Danaher. Op. Br. at 15-22. Dr. Danaher performed a consultative examination on January 18, 2018. AR 762-73. During the examination, Dr. Danaher performed multiple tests including the Wechsler Memory Scale IV, the Wide Range Achievement Test 4th Edition ("WRAT4"), the Wechsler Adult Intelligence Scale IV ("WAIS-IV"), and the Montreal Cognitive Assessment ("MoCA"). AR 762, 764-68, 770. On the MoCA, Plaintiff scored 15 out of a possible 30 points, "with scores below 26 being associated with possible mild cognitive

impairment." AR 766. Plaintiff's performance on the WAIS-IV indicated he has a

Full Scale IQ score ranging between 56-64. AR 767. In each section of the WRAT4,

Plaintiff scored in the lower extreme range. AR 766-67.

Following the completion of these tests, Dr. Danaher recorded the following

diagnostic impressions: "Major Depressive Disorder – Recurrent – Moderate

Severity," "Alcohol Use – In Remission," and "Borderline Level of Intellectual

Functioning." AR 768. Dr. Danaher also stated:

> Diagnostically this case is somewhat difficult. I considered the
> diagnosis of Intellectual Disability – Mild Severity in light of his
> [WAIS-IV] scores. His history and the fact that he has a drivers license
> argue against this diagnosis though. I considered that it was possible
> the patient may not have been providing his best effort though the
> Wechsler Memory Scale IV scores are in the low average range and this
> observation is not consistent with suboptimal effort.

*Id.* Dr. Danaher concluded his written findings stating that Plaintiff's "ability to

understand, remember and carry out simple and complex work instructions in a

work-related environment would be rated as marginal to poor." AR 769. Later in the

opinion, he specified Plaintiff had a mild limitation in his ability to understand,

remember, and carry out simple instructions, and a moderate limitation in his ability

to understand, remember, and carry out complex instructions and in his ability to

make judgments on complex work-related instructions. AR 771.

The ALJ found that Dr. Danaher's report was inconsistent and therefore, gave

it less weight. AR 22. The ALJ's conclusion in this regard was based upon Dr.

Danaher's statement that he considered Plaintiff may not have been giving his best

effort. *Id.*

> The psychologist assessed the claimant may not have been providing
> his best effort on the WAIS-IV, then stated in his summary that there
> was no malingering or exaggeration and found the claimant's ability to
> understand, remember and carry out simple and complex instructions
> in a work related environment would be rated as marginal to poor. The
> [ALJ] finds that the [RFC] above is consistent with Dr. Danaher's
> narrative, not conclusions. Although test results show significantly low
> scores, the remainder of the record supports a functional level above
> that allows for the performance of simple tasks; specifically, the
> claimant has been able to perform semi-skilled work in the past, he has
> a valid driver's license, and he was able to communicate with all
> examining and treating sources without difficulty.

*Id.*

Plaintiff's complaint with regard to the ALJ's decision is not entirely clear.

The Court agrees with Plaintiff that Dr. Danaher's opinion is not inconsistent. Dr.

Danaher indicated that he had *considered* that Plaintiff was not providing his best

effort but *concluded* that was not the case. AR 768. Thus, to the extent the ALJ found

the report inconsistent, substantial evidence does not support this conclusion.

However, Plaintiff then sets forth arguments regarding whether the ALJ, in giving

Dr. Danaher's opinion less weight, improperly relied on his past relevant work, an

ability to communicate with physicians, and his ability to drive. Op. Br. at 18-19.

The Court finds it is unnecessary to engage in this analysis because the RFC is

consistent with Dr. Danaher's opinion, negating Plaintiff's argument that the ALJ

erred in granting the opinion less weight.

Dr. Danaher's statement that Plaintiff's ability to understand, remember, and carry out simple and complex instruction is marginal to poor is confusing. As Defendant notes, even the medical expert who testified at the second administrative hearing, Dr. Maxwell, stated in reference to this written finding from Dr. Danaher, "Yeah that's a little confusing because they combine, you know, in one sentence simple and complex. I agree that complex would be difficult, but simple I don't agree with that. And, you know, he does have a history of simple work and some detailed work." AR 71.

While Dr. Danaher's statement, standing alone, is unclear it is less so when reading Dr. Danaher's report as a whole. As previously noted, following his written findings, Dr. Danaher specifically differentiated Plaintiff's abilities and limitations regarding simple and complex work. He found that Plaintiff has a mild limitation in his ability to understand, remember, and carry out simple instructions, and a moderate limitation in his ability to understand, remember, and carry out complex instructions. AR 771. Dr. Danaher's specific findings in this regard, differentiating Plaintiff's limitations between simple and complex work, are consistent with the ALJ's RFC in which he determined Plaintiff was limited to simple, repetitive instructions. AR 20.

Thus, to the extent the ALJ erred in finding Dr. Danaher's opinion was internally inconsistent, any such error was harmless as the RFC is substantially

supported by Dr. Danaher's opinion. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (stating ALJ's error is harmless "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way"). Accordingly, Plaintiff's claim the ALJ erred in granting Dr. Danaher's opinion less weight does not provide a basis for reversal of the ALJ's decision.

## VI.   Dr. Maxwell's Opinion

In his third issue on appeal, Plaintiff asserts the ALJ's reasoning for assigning great weight to Dr. Maxwell's opinion was flawed. Op. Br. at 22-27. Relevant to Plaintiff's appeal, Dr. Maxwell, the medical expert who testified during the second administrative hearing, concluded Plaintiff could perform "simple, routine and repetitive tasks, with occasional and superficial interaction with the public and occasional interaction with coworkers and supervisors." AR 21, 68. Dr. Maxwell also testified that Plaintiff may be able to follow some detailed instructions. AR 68. In granting Dr. Maxwell's opinion great weight, the ALJ stated:

> As an impartial medical expert, board certified in psychology, the opinion and findings of Dr. Maxwell have been given great weight and consideration because they are consistent with the objective medical evidence, as well as the treating evidence in its entirety. Moreover, Dr. Maxwell provided ample explanation with citation to the medical record.

AR 21. Plaintiff's challenge relies primarily on the last sentence, arguing that Dr. Maxwell's explanations are not supported by the record.

During her testimony, Dr. Maxwell explained her understanding that Plaintiff had finished tenth grade but had not progressed further in his education. AR 66. Plaintiff complains Dr. Maxwell did not appreciate, or may have been unaware, that Plaintiff's classes in ninth and tenth grade were "resource classes," meaning they took place in a separate remedial classroom in a school where students with educational disabilities are given direct instruction. Op. Br. at 24. Plaintiff offers no explanation as to how, presuming she was unaware, this information might have changed Dr. Maxwell's opinion. Moreover, Dr. Maxwell specifically noted that Plaintiff failed his classes in high school and stated that Plaintiff suffers from intellectual disabilities. AR 66, 67.

Plaintiff also challenges one portion of Dr. Maxwell's testimony wherein she cited to four exhibits and indicated she was unsure whether Plaintiff was currently taking medication for depression because the record indicated he was not doing so because of their cost. AR 67. Plaintiff points out that one of Dr. Maxwell's record citations was incorrect as it was to her CV rather than a medical record. This incorrect citation does not constitute a substantive challenge to the decision in this matter. *See, cf., Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where . . . we can follow the adjudicator's reasoning in conducting our review,

and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. . . . [W]e cannot insist on technical perfection."). Additionally, similar to Plaintiff's previous challenge, it is unclear how Dr. Maxwell's discussion of Plaintiff's medication regimen is relevant to her conclusion that Plaintiff is capable of performing simple, repetitive work. Certainly her testimony does not tie her conclusion to Plaintiff's medication usage. AR 67-68.

Plaintiff also states that Dr. Maxwell supported her opinion that he could perform simple and repetitive tasks because "you know, he does have a past history of simple work and some detailed work." Op. Br. at 26 (citing AR 71). With regard to past detailed work, Dr. Maxwell was referencing Plaintiff's past work as a material handler, which is classified as having an SVP of three and semi-skilled. AR 73. Plaintiff asserts Dr. Maxwell did not have the benefit of Plaintiff's testimony during his first administrative hearing wherein his description indicated that the manner in which he actually performed the job would not be considered semi-skilled and/or have an SVP rating of three. Op. Br. at 26 (citing AR 57). While Plaintiff's past relevant work as performed may not support a finding that he can perform detailed, semi-skilled work, the ALJ's RFC did not include an ability to perform detailed and/or semi-skilled jobs. Instead, the ALJ and the state agency consultants,

who did have the benefit of Plaintiff's first administrative hearing testimony, concluded Plaintiff could perform simple, repetitive work. AR 20, 114-15, 147-48.

As the ALJ correctly stated, Dr. Maxwell's opinion in this regard is supported by the evidentiary record and Plaintiff does not state otherwise. The state agency psychologists and, as discussed above, Dr. Danaher concluded Plaintiff was capable of performing simple, repetitive work. AR 114-15, 147-48, 771. Plaintiff's challenge to the ALJ's decision to grant Dr. Maxwell's opinion great weight is without merit.

VII.   <u>Consideration of Literacy</u>

In his final issue, Plaintiff relies on Social Security Ruling ("SSR") 20-01P promulgated on March 9, 2020, and effective on April 27, 2020. SSR 20-01P, How We Determine an Individual's Education Category, 85 Fed. Reg. 13692-02 (March 9, 2020). Under the new ruling, "a claimant [] is 'illiterate' if he or she 'is unable to read or write a simple message in any language.'" *Rodriguez-Gonzalez v. Comm'r of Soc. Sec.*, No. 19-1643 (BJM), 2021 WL 1976632, at *8 (D.P.R. May 17, 2021) (quoting SSR 20-01P). Plaintiff asserts that "if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." Op. Br. at 27 (quoting *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007)). He contends SSR 20-01P would affect the ALJ's decision and therefore the case must be remanded. Op. Br. at 29-31.

SSR 20-01P creates a presumption of illiteracy if the plaintiff failed to finish fourth grade because that is the grade in which "students transition from a focus on learning to read to a focus on reading to learn." SSR 20-01P, 85 Fed. Reg. 13692-02. SSR 20-01P also acknowledges, however, that individuals with more than a fourth grade education, such as Plaintiff, can establish illiteracy through the presentation of evidence "that despite having completed fourth grade or more, he or she cannot, in fact, read or write a simple message in any language." *Id.*

Defendant argues that application of SSR 20-01P would not affect the outcome of the ALJ's decision and therefore, remand of this matter is not warranted. The Court agrees.

Plaintiff asserts that regardless of his progress in school, his reading ability is the equivalent of early third grade, his spelling ability is the equivalent of early second grade, and his sentence completion ability is the equivalent of late second grade. Op. Br. at 29-30. During the administrative hearing, Plaintiff's counsel asked the VE whether there were jobs a hypothetical plaintiff could perform if that plaintiff fell under the ultimately determined RFC and possessed a reading level equivalent to early third grade and sentence completion at a second grade level. AR 79. The VE indicated these abilities would fall under a Language Level of 1. *Id.* Based on this, the VE testified that although the plaintiff would not be able to perform the job of mail sorter, which has a Language Level of 2, he could still perform the job of

merchandise marker as it has a Language Level of 1. *Id.*; *see also Dictionary of Occupational Titles* ("DOT") 222.687-022 (mail sorter/routing clerk), 1991 WL 672133; DOT 209.587-034 (marker), 1991 WL 671802. There are 3,300 merchandise marker jobs in Oklahoma and 310,000 such jobs in the nation. AR 24. Thus, the availability of this job alone supports a finding of non-disability.[2] *See e.g., Lynn v. Colvin*, 637 F. App'x 495, 499 (10th Cir. 2016) (finding 24,900 jobs available throughout the nation to be significant); *Evans v. Colvin*, 640 F. App'x 731, 736-37 (10th Cir. 2016) (finding that the defendant was "substantially justified in arguing that 18,831 remaining jobs in the national economy was sufficient for applying harmless error"); *Chrismon v. Colvin*, 531 F. App'x 893, 899-900 (10th Cir. 2013) (finding 212,000 jobs sufficient); *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (finding only 152,000 jobs in the national economy sufficient); *Smith v. Berryhill*, No. CIV-17-1200-STE, 2018 WL 4855214, at *3-4 (W.D. Okla. Oct. 5, 2018) (finding 136,000 jobs available in the national economy constituted a significant number).

---

[2] The VE did not address whether the power-screwdriver operator job remained available. However, because it has a Language Level of 1, it likely also remains. AR 79; *see also* DOT 699.685-026 (power-screwdriver operator), 1991 WL 678865. There are 2,600 such jobs available in Oklahoma and 311,000 jobs nationwide. AR 24.

VIII.  <u>Conclusion</u>

Based on the foregoing analysis, the decision of Defendant is affirmed. Judgment will issue accordingly.

ENTERED this <u>17th</u> day of <u>August</u>, 2021.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE